AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>The premises of 6016 Highway 10, Jackson,<br>Louisiana, 70748, to include any outbuildings<br>associated with the premises if located thereon. | )<br>)<br>)    Case No. 17- MJ-96<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
The premises of 6016 Highway 10, Jackson, Louisiana, 70748, to include any outbuildings associated with the premises if located thereon, further described in ATTACHMENT "A."

located in the _____Middle_____ District of _____Louisiana_____ , there is now concealed *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance |

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason A. Dohm, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    09/11/2017

_____
*Judge's signature*

City and state:  Baton Rouge, Louisiana

Richard L. Bourgeois, Jr., Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

The property to be searched 6016 Highway 10, Jackson, Louisiana, 70748, to include any outbuildings, storage sheds, detached garages and vehicles associated with the premises if located thereon within the curtilage.

The property is further described as a metal framed mobile home.  The residence is light yellow/cream colored with an attached, covered porch.  A photograph of the property is included below.





# ATTACHMENT B

## Particular Things to be Seized

Items to be searched for and seized include any fruits, contraband, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, including the following:

1.   Cocaine and other controlled substances;

2.   Pots, pans, blenders, presses, or other dishes, items, containers, materials, or equipment used in the conversion of cocaine to cocaine base or to process other controlled substances for redistribution, and which may contain residue from cocaine and other controlled substances.

3.   Drug paraphernalia, including scales, plastic baggies, plastic wrappers, and other equipment and materials used to receive, measure, weigh, package, and distribute cocaine and other controlled substances ;

4.   Baking soda, Isotol, and other chemicals used to process cocaine and other controlled substances for redistribution;

5.   Sums of cash or currency;

6.   Ledgers, logs, and notes containing records of past, present, or future drug transactions or containing information about other drug dealers or transactions;

7.   Any cellular telephones or devises;

8.   Any firearms and/or ammunition; and

9.   Documents related to residency and/or ownership of the property being searched.

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION : | |
| OF THE UNITED STATES OF AMERICA : | CASE NO. 17- MJ-96 |
| FOR A WARRANT AUTHORIZING THE : | |
| SEARCH OF THE PREMISES LOCATED : | **UNDER SEAL** |
| AT 6016 HIGHWAY 10, JACKSON, : | |
| LOUISIANA 70748 : | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

Your Affiant, Jason A. Dohm, a Task Force Officer ("TFO") with the Drug

Enforcement Administration ("DEA"), being duly sworn, deposes and states as follows:

### INTRODUCTION

1.    I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure and Title 21, United States Code, Section 879, for a warrant to

search the premises known as **6016 Highway 10, Jackson, Louisiana, 70748** (hereinafter

"**Subject Premises**"), further described in Attachment A, for the things described in the

following paragraphs and in Attachment B.

### AGENT BACKGROUND

2.    I am a law enforcement officer of the United States within the meaning of Title

18, United States Code, Section 2510(7), that is, an officer of the United States who is

empowered by law to conduct investigations of and to make arrests for offenses enumerated

in Title 18, United States Code, Section 2516.

3.    I am a narcotics detective with the Baton Rouge City Police Department,

employed since April 19, 2004, and have been assigned to the narcotics division since

December 2009.  I was previously assigned to the DEA, Baton Rouge District Office

("BRDO"), from February 26, 2012, to March 2015.  From March 2015, to March 2016, I

was transferred back to the narcotics division where I continued investigating narcotics

trafficking cases in the Baton Rouge area.  I have currently been assigned to the DEA since

March of 2016.  Since being assigned to the DEA as a TFO, I have conducted numerous

investigations of unlawful drug distribution in violation of Title 21, United States Code,

Sections 841(a)(1), 843(b), and 846, and conducted or participated in electronic and physical

surveillance, surveillance of undercover transactions, the introduction of undercover agents,

the execution of search warrants, debriefings of cooperating sources and reviews of taped

conversations and drug records.  Through my training, education and experience, I became

familiar with the manner in which illegal drugs are transported, stored, and distributed and

the methods of payment for such drugs.  I have conducted and participated in investigations

involving interception of wire and electronic communication devices, and I am familiar with

the ways in which drug traffickers conduct their business including, but not limited to, their

methods of importing and distributing drugs, their use of cellular telephones and of digital

display paging devices, and their use of numerical codes and code words to conduct their

transactions.

    4.    In addition, I have conducted, in connection with these and other cases, follow

up investigations concerning the concealment of assets, money, bank records, etc., and the

identification of co-conspirators through the use of ledgers, telephone bills and records,

photographs and bank checks, as related to drug trafficking.

5.     Through my training, education, and experience, I have learned that drug traffickers often place assets in names other than their own or incorporate entities to avoid detection by government agencies.  It has also been my experience that although assets are in other persons' names, the narcotics traffickers actually own and continue to use these assets and exercise dominion and control over them.  Furthermore, large-scale narcotics traffickers also maintain, on hand, large amounts of U.S. currency in order to continue their illicit activities.

6.     Through my training, education, and experience, I have also learned that drug traffickers maintain books, records, notes, airline tickets, money orders, and other papers and documents relating to transportation, ordering, sale, and distribution of illegal controlled substances.  It is also common for large-scale narcotics traffickers to hide drug sales and records of drug transactions in secure locations within their residence and/or business for their ready access and control and to conceal them from law enforcement. Narcotics traffickers in large-scale trafficking organizations also conceal, in their residences and/or place of business, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of illegal drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money gained from illegal narcotics-trafficking activities.

7.     Through my trainings, education, and experience, I have also learned that, when narcotics traffickers amass large proceeds from the sale of drugs, the narcotics trafficker attempts to legitimize their profits. In an attempt to accomplish this, narcotics

traffickers utilize domestic banks and banking services, such as securities, certificates of deposit, money market accounts, safe deposit boxes, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

8.     I am currently participating in an Organized Crime Drug Enforcement Task Force ("OCDETF") investigation involving agents and officers of the DEA, Internal Revenue Service ("IRS"), the Baton Rouge City Police Department ("BRPD"), Iberville Parish Sheriff's Office ("IPSO"), East Baton Rouge Parish Sheriff's Office ("EBRSO"), West Baton Rouge Parish Sheriff's Office ("WBRSO"), the Louisiana State Police ("LSP"), and Ascension Parish Sheriff's Office ("APSO").

9.     I make this affidavit based upon my personal knowledge derived from my participation in this investigation and upon information from the following sources, which I believe to be reliable:

    a.     Oral and written reports and documents about this and other investigations which I have received from members of DEA and telecommunications companies;

    b.     Physical surveillance conducted by DEA and other law enforcement agencies;

    c.     Controlled, undercover purchases of cocaine-base and marijuana

    d.     Public records;

    d.     Review of pen register/trap and trace information, telephone toll records and subscriber information for telecommunications and residential utility service;

    e.     Reports of consensually monitored and recorded telephone conversations;

    f.     Interviews of confidential sources; and

g.    Conclusions based on my and other DEA agents who have been qualified as expert witnesses in narcotic trafficking cases, interpretations of conversations and text messages intercepted pursuant to a court authorized interception of wire and electronic communications.

10.    This affidavit is submitted solely for the purpose of establishing probable cause to support the issuance of a search warrant and does not set forth all facts and circumstances known to me or other investigators regarding this matter.  This affidavit is also offered in support of a search warrant for **6016 Highway 10, Jackson, Louisiana 70748.**

11.    Because this affidavit is being submitted for the limited purpose of seeking authorization for the issuance of a search warrant, your Affiant has not included each and every fact learned during the course of this investigation.  Facts not set forth herein are not being relied upon in reaching the conclusion that a search warrant should be issued.

12.    Since November 2, 2016, agents of the DEA BRDO have been conducting an investigation of the cocaine trafficking of the **Jeremy HAWKINS Drug Trafficking Organization** (hereinafter referred to as the "**HAWKINS DTO**").  This investigation has identified **JEREMY HAWKINS**, a.k.a. "Jr.," and "Pimp" ("**HAWKINS**"), as a large-scale source-of-supply ("SOS") of cocaine, crack cocaine, and marijuana in East Feliciana Parish, and surrounding parishes in Louisiana.

13.    This investigation has also identified **JOHNNY MATTHEWS** ("**MATTHEWS**") as a high-level cocaine and crack cocaine distributor, as well as a mid-scale dealer of marijuana in East Feliciana Parish, and surrounding parishes in Louisiana. During the investigation, **HAWKINS** has been identified as **MATTHEWS'** cocaine and marijuana source.

14.     As the investigation progressed, agents identified telephones used by

**HAWKINS** and **MATTHEWS** to facilitate their narcotics trafficking.

15.     Based on controlled purchases, physical surveillance, CS debriefings, and the

analysis of telephone toll and pen register information, agents initiated court authorized Title

III intercepts of the following telephones (hereinafter referred to as "**TARGET**

**TELEPHONES**") used by **MATTHEWS** and **HAWKINS** to facilitate their drug

trafficking:

i.      225-425-6879, a telephone used by **HAWKINS**, and hereinafter referred to as

   **TARGET TELEPHONE 1**.  Interception of **TARGET TELEPHONE 1**

   began on June 5, 2017, and was terminated on June 20, 2017.

ii.     225-244-4899, a telephone used by **MATTHEWS**, and hereinafter referred to

   as **TARGET TELEPHONE 2**.  Interception of **TARGET TELEPHONE 2**

   began on June 5, 2017, and was terminated on July 4, 2017.

iii.    504-875-9495, a telephone used by **HAWKINS**, and hereinafter referred to as

   **TARGET TELEPHONE 3**.  Interception of **TARGET TELEPHONE 3**

   began on June 23, 2017, and was terminated on August 3, 2017.

iv.     225-719-9151, a telephone used by **HAWKINS**, and hereinafter referred to as

   **TARGET TELEPHONE 4**.  Interception of **TARGET TELEPHONE 4**

   began on July 21, 2017, and was terminated on August 20, 2017.

v.      225-603-1868, a telephone used by **HAWKINS** and hereinafter referred to as

   **TARGET TELEPHONE 5**.  Interception of **TARGET TELEPHONE 5**

   began on August 15, 2017, and was terminated on August 28, 2017.

16.     Included in the Court Order authorizing the interception of wire and electronic communications occurring over the **TARGET TELEPHONES** is the release of E-911Phase II Geo Location data from the service provider.  E-911 Phase II Geo Location data is the GPS location of the **TARGET TELEPHONES**.

17.     Based on my training and experience and the facts set forth in this affidavit, your Affiant believes that **MATTHEWS**, has committed, is committing, and will continue to commit offenses involving distribution of cocaine and cocaine base, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841(a)(1). Furthermore as set forth below, there is also probable cause to believe that **MATTHEWS** is using **Subject Premises** to facilitate his cocaine trafficking.

## PROBABLE CAUSE

18.     In November 2016, agents of the BRDO initiated an investigation into the cocaine trafficking of **MATTHEWS** and the **HAWKINS DTO**. The investigation identified **HAWKINS** as the leader of an organization that is distributing multi-kilogram quantities in the East Feliciana Parish, and surrounding parishes in Louisiana.  The investigation has identified **HAWKINS** as **MATTHEWS'** source, and **MATTHEWS** as a dealer of cocaine, cocaine base, and marijuana.  During the course of the investigation, your Affiant has learned the identity of certain members of the **HAWKINS DTO**, and basic operation of its narcotics distribution through physical surveillance, interceptions over the **TARGET TELEPHONES**, and discussion with confidential sources and other law enforcement officers.  In addition, your Affiant has learned the base of operation for **MATTHEWS'**

narcotics distribution is located at the **Subject Premises**. Based on physical surveillance, intercepted communications, and E-911 Phase II Geo Location data, your Affiant has learned the **Subject Premises** is also **MATTHEWS'** personal residence.

19.     From November 2, 2016, through March 2017, agents held several debriefings with Confidential Source 1 (hereinafter referred to as "CS-1") regarding **MATTHEWS**.

20.     During debriefings, CS-1 disclosed that he/she has a long-standing cocaine and marijuana trafficking relationship with **MATTHEWS**. CS-1 stated that **MATTHEWS** charges $1000 per ounce of cocaine-base, and $600 per pound of marijuana. According to CS-1, the largest quantity of narcotics he/she has purchased from **MATTHEWS** was seven (7) ounces of cocaine-base for $7,000 on one occasion, and ten (10) pounds of marijuana for $6,500 on another occasion.

21.     According to CS-1, when he/she purchased cocaine-base and/or marijuana from **MATTHEWS**, the transactions took place at **Subject Premises**. This information was confirmed during two controlled purchases and physical surveillance as described below in detail.

22.     After a controlled purchase conducted on November 30, 2016, agents searched CS-1 and CS-1's vehicle for weapons, drugs, or money. During this time, Task Force Agent ("TFA") Timothy Fabre located a quantity of cocaine base secreted in the roof eyeglass holder by the headliner of the vehicle. Upon confronting CS-1, CS-1 advised your Affiant and TFA Fabre that he/she made the purchase of three ounces of cocaine-base, along with a half-pound of marijuana, from **MATTHEWS** for $3,300 and stated that he/she left **MATTHEWS'** residence.

23.    According to CS-1, while driving to the pre-arranged location to meet with agents, CS-1 stated that he/she removed a quantity of cocaine-base from one of the bags given to CS-1 by **MATTHEWS** and placed it into the eyeglass holder.  CS-1 stated that he/she needed to make money due to going through financial hardships at the present time.  CS-1 stated that he/she knew taking the cocaine-base was wrong.  CS-1 was not financially compensated for the controlled purchase.

24.    Your Affiant and TFA Fabre contacted the supervising Assistant United States Attorney for this investigation and a decision on the arrest and/ or prosecution of CS-1 will be delayed until a time that will not risk compromising the investigation.

25.    Even though CS-1 attempted to hide narcotics in his/her vehicle after a controlled purchase, your Affiant believes the purchases conducted by CS-1 described below were conducted in a controlled manner, and every necessary precaution was taken to maintain the integrity of the investigation and evidence.  Specifically, CS-1 and his/her vehicle were thoroughly searched before and after each purchase.  CS-1 was under constant physical surveillance as he/she traveled to and from **Subject Premises** where each controlled purchase was conducted.  During each controlled purchase, CS-1 was equipped with audio transmitters and digital video cameras, which allowed agents to monitor the conservations between CS-1 and the target(s).  To the extent possible, information provided by CS-1 in the instant investigation has been corroborated by independent investigative means.  To your Affiant's knowledge, the CS-1 has never provided misleading or incorrect information about the instant investigation.  Therefore, your Affiant believes the information provided by CS-1 about **MATTHEWS** is credible and reliable.

**A.** **Controlled Purchase of Cocaine-Base and Marijuana on November 30, 2016.**

26.     On November 28, 2016, at the direction of your Affiant, CS-1 placed a consensually monitored and recorded telephone call to **MATTHEWS** at **TARGET TELEPHONE 2** to arrange the purchase of three ounces of cocaine base.

27.     During the call, CS-1 advised **MATTHEWS**, he/she needed to come see **MATTHEWS** on Wednesday (November 30). **MATTHEWS** responded, "That would be good, I still got a lot of shit, I still got a lot of it." (meaning **MATTHEWS** had a large quantity of narcotics in his possession).

28.     CS-1 advised **MATTHEWS**, "I'm going to buy a bunch of different stuff." (meaning various types of narcotics). **MATTHEWS** responded, "Ok, that'll work, I'm going to be good." (meaning **MATTHEWS** had a variety of narcotics to sell).

29.     On November 30, 2016, at the direction of your Affiant, CS-1 placed a consensually monitored and recorded telephone call to **MATTHEWS** at **TARGET TELEPHONE 2** to arrange the purchase of three ounces of cocaine base.

30.     During the call, CS-1 asked **MATTHEWS**, if he/she could come see **MATTHEWS**. **MATTHEWS** responded, "Alright, I'm at the house." (referring to **Subject Premises**).

31.     Subsequent to these telephone calls, CS-1 and CS-1's vehicle were searched for weapons, drugs, or money and none were found. CS-1 was equipped with two covert audio/video digital recording devices, and provided CS-1 with $3,300 Official Advanced Funds ("OAF") to conduct a controlled purchase of cocaine base from **MATTHEWS.**

32.     CS-1 traveled to **Subject Premises**, where he/she contacted **MATTHEWS** who was inside the **Subject Premises**.  Once inside **Subject Premises**, CS-1 negotiated prices and quantities of narcotics with **MATTHEWS**.  **MATTHEWS** agreed to sell three ounces of cocaine base and one-half pound of marijuana for $3,300.

33.     CS-1 gave **MATTHEWS** $3,300, took possession of the cocaine base and marijuana, and departed the **Subject Premises**.

34.     Your Affiant notes **MATTHEWS** weighed the cocaine base and marijuana on a digital scale prior to complete the narcotics transaction.

**B.      Controlled Purchase of Cocaine Base on December 7, 2016.**

35.     On December 7, 2016, at the direction of your Affiant, CS-1 placed a consensually monitored and recorded telephone call to **MATTHEWS** at **TARGET TELEPHONE 2** to arrange the purchase of three ounces of cocaine base.

36.     During the call, CS-1 advised **MATTHEWS**, "I need to meet you at the house, how long?" (referring to **Subject Premises**).

37.     **MATTHEWS** responded, "I'll be there in about, about 20 minutes." (meaning **MATTHEWS** would be at the **Subject Premises** in about twenty minutes).  CS-1 advised **MATTHEWS**, "Alright player I'm fixing to come see you, I need another one, like the other one." (meaning CS-1 wanted to purchase three ounces of cocaine base as he/she previously purchased on November 30, 2016, at the **Subject Premises**).  **MATTHEWS** responded, "Alright" (meaning **MATTHEWS** agreed to sell three ounces of cocaine base to CS-1).

38.     Subsequent to these telephone calls, CS-1 and CS-1's vehicle were searched for weapons, drugs, or money and none were found.  At that time, CS-1 was equipped with two covert audio/video digital recording devices and provided with $3,000 in official advanced funds (OAF) to conduct a controlled purchase of cocaine base from **MATTHEWS**. CS-1 traveled to **Subject Premises**, where he/she contacted **MATTHEWS** who was inside the **Subject Premises**.  CS-1 went inside **Subject Premises** and entered the dining room with **MATTHEWS** to complete the transaction.

39.     At that time, **MATTHEWS** placed three ounces of cocaine base on the table. CS-1 took possession of the three ounces of cocaine base and placed the $3,000 OAF on the table. **MATTHEWS** picked up the money and counted it.  CS-1 departed **Subject Premises** to meet with your Affiant and TFA Fabre.

40.     Based on the controlled purchases on November 30, 2016, and December 7, 2016, as well as debriefings of CS-1 immediately after the controlled purchases, your Affiant knows that **MATTHEWS** utilizes **Subject Premises** to distribute cocaine base and marijuana.  In addition to conducting the sale of cocaine base and marijuana from **Subject Premises**, your Affiant knows **MATTHEWS** has tools used in the distribution of cocaine base and marijuana, such as digital scales, in the **Subject Premises**.

41.     Based on training and experience your Affiant knows locations used by drug traffickers to distribute cocaine, cocaine base, and marijuana, often contain materials to facilitate the distribution of cocaine, cocaine base and marijuana, such as: packaging materials, cutting materials, digital scales, firearms, and U.S. currency.

42.    Based on the above described investigation, your Affiant believes that evidence of **MATTHEWS** drug trafficking is contained within the **Subject Premises**.

C.    **Intercepted Communications over TARGET TELEPHONE 2.**

43.    Detailed below are transcriptions of several intercepted telephone calls and text messages. Your Affiant and TFA Fabre have listened and analyzed every telephone call and text message referenced below in its entirety.

44.    On June 15, 2017, at approximately 6:52 p.m., agents intercepted Session 1546, an incoming call from telephone number 225-301-4713, utilized by **Raymond Johnston ("Johnston")**, over **TARGET TELEPHONE 2** to **MATTHEWS**.  During the telephone call the following conversation occurred:

> **MATTHEWS**: "Hello."
>
> **Johnston**: "Hey, you home?" (Meaning **Subject Premises**)
>
> **MATTHEWS**: "Yea, I'm home." (Meaning **Subject Premises**)
>
> **Johnston**: "I need a twenty soft." (Meaning $20 worth of cocaine)
>
> **MATTHEWS**: "Alright."
>
> **Johnston**: "Alright."

45.    Based on the above conversation, your Affiant believes **Johnston** asks **MATTHEWS** if he was at the **Subject Premises**.  **MATTHEWS** told **Johnston** he was at the **Subject Premises**.  **Johnston** told **MATTHEWS** he wanted to purchase $20 worth of cocaine, to which **MATTHEWS** responded "alright," agreeing to the sale of narcotics.

46.    On June 26, 2017, at approximately 1:09 p.m., agents intercepted Session 2530 an incoming call from telephone number (225) 301-4713, utilized by **Johnston**, over **TARGET TELEPHONE 2** to **MATTHEWS**.  During the telephone call, the following conversation occurred:

> **MATTHEWS:** "Hello."
>
> **Johnston:** "What's up with you?"
>
> **MATTHEWS:** "What's up?"
>
> **Johnston:** "Bout to come get a half of some green, maybe two or three X pills."
>
> **MATTHEWS:** "Shit I'm in Mississippi right now. Give me about 30 min I will be back at the house." (meaning **Subject Premises**).
>
> **Johnston:** "Alright."

47.    Based on the above conversation, your Affiant believes that **Johnston** told **MATTHEWS** that he wanted to come to the **Subject Premises** and purchase a quantity of marijuana and ecstasy.  **MATTHEWS** told **Johnston** he was in Mississippi.  **MATTHEWS** further advised **Johnston** he would be back at the **Subject Premises** in thirty minutes to conduct the narcotics transaction.

48.    On June 26, 2017, at approximately 5:37 p.m., agents intercepted Session 2571, an incoming call from an unknown male ("**U/M**") on telephone number (225) 439-7719, over **TARGET TELEPHONE 2** to **MATTHEWS**. During the telephone call, the following conversation occurred:

> **U/M:** "Hey buddy how you making it?"
>
> **MATTHEWS:** "I'm fixing to get out of here in a couple of minutes and go to Home Depot."

> **U/M:** "I'm on my way from Clinton. Can you wait on me for a few minutes?"
>
> **MATTHEWS:** "Yeah, what you wanted?"
>
> **U/M:** "Can I get about a 15?"
>
> **MATTHEWS:** "Alright."

49.    Based on the above conversation, your Affiant believes **MATTHEWS** told the unknown male he was about to leave the **Subject Premises** and go to Home Depot. The **U/M** advised **MATTHEWS**, he is on his way to the **Subject Premises** and asks **MATTHEWS** if he can wait for him. **MATTHEWS** tells the **U/M** he will wait for him, and asked him what he wanted to purchase (narcotics). The **U/M** asks **MATTHEWS** if he can get $15 worth of unknown narcotics, with **MATTHEWS** agreeing to the sale.

50.    On the same date, at approximately 5:32 p.m., agents received cellphone location data from AT&T, the service provider of **TARGET TELEPHONE 2**, placing **MATTHEWS'** location within a 41-meter certainty factor of **Subject Premises**.

51.    On July 4, 2017, at approximately 2:59 p.m., agents intercepted Session 3236 an incoming call from telephone number (225) 573-6775, utilized by subject who identified himself as "**Sky**" over **TARGET TELEPHONE 2** to **MATTHEWS**. During the telephone call, the following conversation occurred:

> **Sky:** "What going on babe?"
>
> **MATTHEWS:** "Who this?"
>
> **Sky:** "This Sky."
>
> **MATTHEWS:** "Awe, what's up buddy?"
>
> **Sky:** "You got it babe, what you know good?"

**MATTHEWS:** "Glad you called – I had lost your phone number. I had got another phone so I can put your number in."

**Sky:** "Okay, okay…you around the house?" (meaning **Subject Premises**).

**MATTHEWS:** "Yeah I'm at the house." (meaning **Subject Premises**).

**Sky:** "You ain't got no soft, huh?"

**MATTHEWS:** "Yeah."

**Sky:** "Alright, I'ma be through there in a little bit. I'ma come through there a get something call you in a little bit."

**MATTHEWS:** "Alright."

52.    Based on the above conversation, your Affiant believes **Sky** asked **MATTHEWS** if he was at the **Subject Premises**. **MATTHEWS** advised **Sky** he was at the **Subject Premises**. **Sky** then asks **MATTHEWS** if he has powder cocaine, and **MATTHEWS** replied yes, he does have powder cocaine. **Sky** informs **MATTHEWS** they will come to the **Subject Premises** to purchase a quantity of powder cocaine, with **MATTHEWS** agreeing to the sale of narcotics.

53.    On the same date, at approximately 2:43 p.m., agents received cellphone location data from AT&T, the service provider of **TARGET TELEPHONE 2**, placing **MATTHEWS'** location within an 18-meter certainty factor of **Subject Premises**.

54.    On the same date, at approximately 3:15 p.m., agents received cellphone location data from AT&T, the service provider of **TARGET TELEPHONE 2**, placing **MATTHEWS'** location within a 57-meter certainty factor of **Subject Premises**.

**D.    Interceptions Between TARGET TELEPHONE 2 and TARGET TELEPHONE 3.**

55.    On June 30, 2017, at approximately 8:51 p.m., agents intercepted Session 598, an incoming text message from **TARGET TELEPHONE 2 (MATTHEWS)** over **TARGET TELEPHONE 3 (HAWKINS)**.  **MATTHEWS** tells **HAWKINS**, "Man I have forgot to call u but I have u hit me up we u get ready."

56.    Based on the above text message, your Affiant believes **MATTHEWS** is telling **HAWKINS** he has money (drug payment) for him.

57.    On June 30, 2017, at approximately 8:38 p.m., agents intercepted Session 599, an outgoing text message over **TARGET TELEPHONE 3 (HAWKINS)** to **TARGET TELEPHONE 2 (MATTHEWS)**.  **HAWKINS** texts **MATTHEWS**, "About to come now."

58.    Based on the above text message, your Affiant believes **HAWKINS** is telling **MATTHEWS** he is about to come to the **Subject Premises** to obtain payment for narcotics.

59.    On June 30, 2017, at approximately 9:43 p.m., agents intercepted Session 604, an incoming text message from **TARGET TELEPHONE 2, (MATTHEWS)** over **TARGET TELEPHONE 3 (HAWKINS)**.  **MATTHEWS** texts **HAWKINS**, "Ok."

60.    On June 30, 2017, at approximately 9:49 p.m., agents intercepted Session 607, an outgoing text message over **TARGET TELEPHONE 3 (HAWKINS)** to **TARGET TELEPHONE 2 (MATTHEWS)**.  **HAWKINS** states, "Pulling up."

61.    Based on the above text message, your Affiant believes **HAWKINS** is telling **MATTHEWS** he is arriving at the **Subject Premises** to obtain payment for narcotics.

62.     On the same date, at approximately 9:38 p.m., agents received cellphone location data from AT&T, the service provider of **TARGET TELEPHONE 2**, placing **MATTHEWS'** location within a 24-meter certainty factor of **Subject Premises**.

63.     On the same date, at approximately 10:16 p.m., agents received cellphone location data from AT&T, the service provider of **TARGET TELEPHONE 2**, placing **MATTHEWS'** location within a 31-meter certainty factor of **Subject Premises**.

64.     On July 21, 2017, agents intercepted Sessions 2170, 2172 and 2173 between **HAWKINS** and **MATTHEWS (TARGET TELEPHONE 2)**, over **TARGET TELEPHONE 3 (HAWKINS)**.  In Session 2170, **HAWKINS** asks **MATTHEWS**, "How we looking."  In Session 2172, **MATTHEWS** replies, "Good I'm going to get with u n a min."  In Session 2173 **HAWKINS** texts, "Ill get with u Sunday get what u got."

65.     Based on the above text message conversation, your Affiant believes **HAWKINS** is asking **MATTHEWS** if he has money for the payment for narcotics. **HAWKINS** further tells **MATTHEWS** that he will get with him on Sunday and collect whatever money (drug payment) **MATTHEWS** has at that time.

**E.     Interception Between TARGET TELEPHONE 2 and TARGET TELEPHONE 5.**

66.     On August 18, 2017, agents intercepted Session 313, an incoming text message from **TARGET TELEPHONE 2 (MATTHEWS)** over **TARGET TELEPHONE 5 (HAWKINS)**. **MATTHEWS** texts **HAWKINS**, "Whats good people."

67.     Based on the above text message, your Affiant believes **MATTHEWS** is asking **HAWKINS** if he has any narcotics for sale.

68.     Based on the above intercepted telephone conversations in conjunction with

the controlled purchases, and cellular location phone data your Affiant knows **MATTHEWS** is using the **Subject Premises** to process and package cocaine, cocaine base and marijuana for distribution and storage. Your Affiant believes evidence of these narcotics trafficking activities are contained within the residence.

69.     Investigation to date reveals that **MATTHEWS** is presently distributing cocaine base and marijuana. Based on the investigation to date, your Affiant believes that **MATTHEWS** is continuing to use **Subject Premises** to facilitate his cocaine and marijuana trafficking.

## CONCLUSION

70.     Based on the facts set forth in this affidavit, as well as my training and experience, your Affiant believes that **MATTHEWS** is committing, and will continue to commit offenses involving distribution of cocaine, cocaine base, and marijuana, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841(a)(1), at **Subject Premises**.

71.     This investigation has revealed that **MATTHEWS** uses **Subject Premises** to facilitate their narcotics-trafficking activities. Furthermore, it is also believed that the **Subject Premises is MATTHEWS'** primary residence. Your Affiant knows, through training and experience, that locations used by cocaine traffickers to store cocaine, distribute cocaine, accept delivery of cocaine, and package cocaine for distribution often times contain tools used for these purposes. These items include, but are not limited to, cocaine, cocaine

base, kilogram wrappings, latex gloves, digital scales, packaging materials, cooking materials, cutting materials, mixing devices, digital scales, rubber gloves, and ledgers or logs containing records of past, present, or future drug transactions.

72.    Based on the above-detailed controlled purchases, intercepted communications, confidential source information, and physical surveillance, your Affiant believes that **MATTHEWS** utilizes **Subject Premises** to store cocaine and cocaine base, package cocaine and cocaine base for distribution, and distribute cocaine and cocaine base, along with other narcotics.  Your Affiant believes evidence of narcotics trafficking activities are contained within **Subject Premises**.  Accordingly, your Affiant respectfully requests that a search warrant be issued.

73.    Additionally, pursuant to Title 21, United States Code, Section 879, there exists good cause to permit the execution of the requested warrant at any time in the day or night.  During this investigation, your Affiant has learned that the majority of narcotics transactions occur at **Subject Premises** in the late afternoon and nighttime hours.  Your Affiant knows that **MATTHEWS** works during the day, and is rarely at **Subject Premises** during daytime hours. Through intercepted communications and physical surveillance, your Affiant has learned that **MATTHEWS** usually works until mid-afternoon and then travels from work to **Subject Premises** to conduct narcotics transactions.  During the interception of **MATTHEWS'** phone, agents intercepted telephone calls indicating **MATTHEWS** was distributing narcotics as late as 11:03 p.m.  For these reasons, and to ensure that the warrant is executed at a time when contraband is likely to be found at **Subject Premises**, your Affiant seeks authorization to execute the requested warrant at any time of the day or night.

74.    It is requested that the warrant and accompanying affidavit and application in support thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against potential flight, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.

75.    Based on the aforementioned information I request the authority to search the above described addresses.

_____
Jason A. Dohm, Task Force Officer
Drug Enforcement Administration


Sworn to and subscribed in my presence this ___11th___ day of September, 2017, at Baton Rouge, Louisiana.



_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

21



AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The premises of 6016 Highway 10, Jackson,<br>Louisiana, 70748, to include any outbuildings<br>associated with the premises if located thereon. | )<br>)<br>)<br>)<br>)<br>)    Case No.   17- MJ-96 |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Middle _____ District of _____ Louisiana _____
*(identify the person or describe the property to be searched and give its location)*:

The premises of 6016 Highway 10, Jackson, Louisiana, 70748, to include any outbuildings associated with the premises if
located thereon, further described in ATTACHMENT "A."

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

**YOU ARE COMMANDED** to execute this warrant on or before **SEPTEMBER 25, 2017** *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to     RICHARD L. BOURGEOIS JR.     .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     9/11/17 at 3:15pm _____     _____
                                                                                            *Judge's signature*

City and state:     Baton Rouge, LA _____     Richard L. Bourgeois, Jr., Magistrate Judge
                                                                                            *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

The property to be searched 6016 Highway 10, Jackson, Louisiana, 70748, to include any outbuildings, storage sheds, detached garages and vehicles associated with the premises if located thereon within the curtilage.

The property is further described as a metal framed mobile home.  The residence is light yellow/cream colored with an attached, covered porch.  A photograph of the property is included below.





# ATTACHMENT B

### Particular Things to be Seized

Items to be searched for and seized include any fruits, contraband, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, including the following:

1. Cocaine and other controlled substances;

2. Pots, pans, blenders, presses, or other dishes, items, containers, materials, or equipment used in the conversion of cocaine to cocaine base or to process other controlled substances for redistribution, and which may contain residue from cocaine and other controlled substances.

3. Drug paraphernalia, including scales, plastic baggies, plastic wrappers, and other equipment and materials used to receive, measure, weigh, package, and distribute cocaine and other controlled substances ;

4. Baking soda, Isotol, and other chemicals used to process cocaine and other controlled substances for redistribution;

5. Sums of cash or currency;

6. Ledgers, logs, and notes containing records of past, present, or future drug transactions or containing information about other drug dealers or transactions;

7. Any cellular telephones or devises;

8. Any firearms and/or ammunition; and

9. Documents related to residency and/or ownership of the property being searched.